# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| **ATHEAL PIERCE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **AMERICAN GENERAL FINANCE,** | ) | **06 CV-985-WKW** |
| **INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO COMPEL ARBITRATION

---

**COMES NOW** American General Financial Services of Alabama, Inc. ("AGFS"), formerly known as American General Finance, Inc., and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, moves to dismiss the Complaint of Plaintiff Atheal Pierce ("Pierce"). Alternatively, AGFS moves to compel arbitration of Pierce's claims. As grounds, AGFS states as follows:

### MOTION TO DISMISS

1.      This lawsuit is another in a long line of frivolous efforts by Pierce to manipulate the legal process. Specifically, Pierce entered into a loan transaction with AGFS on February 3, 1999 ("Loan Agreement"), which was secured by real estate owned by Pierce ("Property"). A true and correct copy of the Loan

Agreement is attached hereto as Exhibit A.    Pierce defaulted on the Loan Agreement, and as a result, AGFS commenced foreclosure proceedings and scheduled a foreclosure sale for April 27, 2005.    On April 26, 2005, in a transparent attempt to delay the foreclosure sale, Pierce filed for bankruptcy in a case styled *In Re: Atheal Pierce*, Chapter 13 Case No. 05-31205, in the United States Bankruptcy Court for the Middle District of Alabama ("Bankruptcy Action").

2.    On June 15, 2005, AGFS filed a motion to lift the stay in the Bankruptcy Action so that it could move forward with the foreclosure proceedings. On August 15, 2005, the Honorable Dwight Williams, United States Bankruptcy Judge, entered an order conditionally terminating the stay.    On September 8, 2005, AGFS filed a motion to dismiss the Bankruptcy Action and requested a 180 day bar against refiling a bankruptcy action.    On September 15, 2005, Judge Williams granted AGFS's motion to dismiss and entered an order prohibiting Pierce from refiling a bankruptcy action within 180 days.

3.    On October 15, 2005, Pierce appealed Judge Williams' order to this Court, and the appeal was assigned to the Honorable Myron H. Thompson.    Pierce did not file a motion to stay the foreclosure proceedings pending the appeal, and as a result, on October 31, 2005, AGFS held a foreclosure sale on the Property at which AGFS purchased the Property.    After the foreclosure sale, Pierce refused to

relinquish possession of the Property, and as result, AGFS filed an action against Pierce styled *American General Finance, Inc. v. Atheal Pierce*, Case Number CV-2005-3197-TMH, in the Circuit Court of Montgomery County, Alabama, seeking, *inter alia*, an order of ejectment ("Ejectment Action").  The Ejectment Action was assigned to the Honorable Truman M. Hobbs, Jr.

4.     On October 28, 2005, the trustee in the Bankruptcy Action, Otis Reding, filed a motion to dismiss Pierce's appeal due to, *inter alia*, Pierce's failure to pay the appropriate filing fees.  Judge Thompson entered an order requiring Pierce to respond to the motion to dismiss by December 9, 2005, but Pierce failed to do so, and as a result, on December 28, 2005, Judge Thompson entered an order stating that Pierce's appeal would be dismissed.

5.     On February 15, 2006, after an "emergency" motion by Pierce, which Judge Thompson treated as motion to alter or amend the order of dismissal, Judge Thompson reinstated Pierce's appeal and held that the Court would consider the appeal on its merits.

6.     On February 21, 2006, Judge Thompson affirmed the judgment of the bankruptcy court.  On February 26, 2006, Pierce appealed that decision to the United States Court of Appeals for the Eleventh Circuit, and he sought leave to proceed without prepayment of fees.  On March 24, 2006, Judge Thompson entered an order treating Pierce's motion as a motion to proceed on appeal in

3

forum pauperis.   Judge Thompson then denied that motion, and significantly, pursuant to 28 U.S.C. 1915(a)(3), Judge Thompson certified that the appeal was not being taken in good faith.   Thus, Judge Thompson clearly recognized the improper motive behind Pierce's maneuverings.

7.     On May 2, 2006, Pierce paid the required filing fee for the appeal to the Eleventh Circuit, but he never filed a brief in support of the appeal, and as a result, on June 23, 2006, his appeal to the Eleventh Circuit was dismissed for failure to prosecute.

8.     After the conclusion of Pierce's futile delay tactics in connection with his Bankruptcy Action, Judge Hobbs set AGFS's Ejectment Action for trial on August 29, 2006.   Pierce failed to appear for that trial, and on August 30, 2006, Judge Hobbs entered judgment in favor of AGFS ordering, *inter alia*, that Pierce relinquish possession of the Property.   A true and correct copy of that order is attached hereto as Exhibit B.   Pierce appealed that decision to the Supreme Court of Alabama.

9.     On October 31, 2006, while his appeal of Judge Hobbs' order was pending, Pierce filed this Action against AGFS.   However, Pierce failed to obtain service of process on AGFS, and as a result, on March 1, 2007, the Court entered an order requiring Pierce to show cause as to why the case should not be

dismissed.  Only then did Pierce take the necessary steps to perfect service of process on AGFS.

10.    This lawsuit is merely a continuation of Pierce's previous efforts to cynically manipulate the judicial process.  Pierce purports to state a claim against AGFS for violation of his civil rights, but he utterly fails to state the manner in which AGFS allegedly violated his civil rights.  Presumably, he asserts the claim pursuant to 42 U.S.C. § 1983, but the law is quite clear that section 1983 applies only to officials acting under color of state law and does not reach the conduct of private individuals or corporations.  *Int'l Molder and Allied Workers, AFL-CIO v. Buchanan Lumber Birmingham*, 459 F.Supp. 950, 952 (N.D. Ala. 1978) (private litigant does not act "under color of state law" merely by bringing lawsuit).  In addition, Judge Hobbs enjoys immunity from suit under Section 1983.  *Scott v. Hayes*, 719 F.2d 1562, 1567 (11th Cir. 1983) (judge performing judicial acts in matter over which he had jurisdiction is entitled to immunity for his acts under Section 1983), see also, *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984) (district court properly dismissed complaint because a "naked assertion of a conspiracy between a state judge and private defendants without supporting operative facts provides an insufficient state action nexus for a section 1983 action").  Therefore, Pierce has failed to state a claim under section 1983 upon

which relief may be granted, and as a result, the Court should dismiss his Complaint.

11.    Pierce also makes vague and unsupported allegations that AGFS is guilty of theft, false foreclosure, a false bar to redemption, and fraud. To the extent those claims even constitute a cause of action, Pierce fails to give AGFS any notice of the basis of the claims, and certainly does not comply with Rule 9(b) of the Federal Rules of Civil Procedure, which requires him to plead his claim of fraud with particularity. As a result, the Court should bring an end to Pierce's abuse of the judicial process and dismiss his Complaint for failure to state a claim upon which relief can be granted.

## MOTION TO COMPEL ARBITRATION

12.    If, for some reason, the Court determines that Pierce has stated a claim against AGFS, AGFS moves to compel that claim to arbitration because Pierce's Loan Agreement includes a provision entitled "Arbitration of Claims and Waiver of Jury Trial" ("Arbitration Agreement"). (Exh. A).

13.    The Arbitration Agreement requires Pierce to submit to binding arbitration all claims or disputes against AGFS relating to Pierce's loan transaction with AGFS. The Arbitration Agreement specifically provides as follows:

> Borrower(s) hereby acknowledge that the transactions evidenced by this agreement involve interstate commerce. Borrower(s) and Lender agree that, except as otherwise set forth in this provision, all claims, disputes, or controversies of every kind and nature between

Borrower(s) and Lender shall be resolved by arbitration including (i) those based on contract, tort or statute, (ii) those arising out of or relating to the transaction(s) evidenced by this agreement, the disclosures relating to this agreement, the Federal Disclosure Statement, any insurance certificates or policies, any documents executed at or about the same time this agreement was executed or (iii) those arising out of, relating to any other prior, proposed or actual loan or extension of credit (and the relationships which result from these transactions or any other previous transactions between Borrower(s) and Lender).  Borrower(s) and Lender further agree that all issues and disputes as to the arbitrability of claims must also be resolved by the arbitrator.

> **BORROWER(S) AND LENDER UNDERSTAND THAT EACH HAS THE RIGHT TO LITIGATE SUCH DISPUTES THROUGH A COURT, AND BORROWER(S) AND LENDER VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL OR JUDGE TRIAL OF SUCH DISPUTES.**

Arbitration of such claims will be conducted by a single arbitrator selected by the Borrow(s) and Lender, pursuant to the Federal Arbitration Act and according to the commercial rules of the American arbitration Association, at a reasonable and convenient location to be selected by the Borrower(s).  Each party shall pay one-half of the arbitration costs and expenses.

Borrower(s) and Lender agree that they and the Arbitrator shall be bound by the Federal Rules of Evidence in the arbitration of such claims.  In the event of a conflict between the commercial rules of the American Arbitration Association and the Federal Rules of Evidence, the Federal Rules of Evidence control.  The Arbitrator's findings, decision and award shall be written, and shall be based on the law of the jurisdiction in which this agreement was executed.  The decision of the Arbitrator shall be final, binding, and enforceable in any court as though it were a decision on the merits after a trial on the merits. The Arbitrator's findings, decision and award shall be subject to judicial review as provided in 9 USC Section 10.

**BORROWER(S) AND LENDER AGREE THAT THE ARBITRATOR MAY AWARD PUNITIVE DAMAGES ONLY UNDER CIRCUMSTANCES WHERE A COURT OF COMPETENT JURISDICTION COULD AWARD SUCH DAMAGES. HOWEVER, IN NO EVENT SHALL AN AWARD OF DAMAGES EXCEED FIVE (5) TIMES THE ECONOMIC LOSS SUFFERED BY THE PARTY. BORROWER(S) AND LENDER FURTHER AGREE THAT THE ARBITRATOR SHALL NOT CONDUCT ANY CLASS-WIDE PROCEEDINGS AND WILL BE RESTRICTED TO RESOLVING THE INDIVIDUAL DISPUTES BETWEEN THE PARTIES.**

Borrower(s) and Lender agree that, notwithstanding the foregoing, Lender retains the right to use judicial or self-help remedies (i) to repossess or foreclose on collateral or to enforce the security interests relating to this transaction, and (ii) to pursue collection actions against the Borrower(s) where the amount of the debt is $10,000 or less. The exercise of this right by Lender to pursue judicial or self-help remedies shall not constitute a waiver of Lender's right to compel the arbitration of any claim or dispute subject to this arbitration clause - including the filing of a counterclaim by Borrower(s) in a lawsuit filed by Lender.

This arbitration clause shall be binding upon the assigns, directors, officers, representatives, employees, parent companies, affiliated companies, subsidiaries and successors of Lender, and the administrators, assigns, executors, heirs and representatives of Borrower(s). In addition, the parties agree to submit to arbitration not only the foregoing claims or disputes against each other, but also all claims or disputes they have against (i) all other persons or entities involved with the transactions subject to this clause, (ii) all persons or entities who signed or executed any of the documentation subject to this clause, and (iii) all persons or entities who may be jointly or severally liable to any of the parties to this agreement regarding matters or events relating to the transactions and documentation subject to this clause.

Borrower(s) and Lender agree that if any provision of this arbitration clause is invalid or unenforceable under the Federal Arbitration Act, the provision which is found to be invalid or unenforceable shall be inapplicable and deemed omitted, but shall not invalidate the remaining provisions of this arbitration clause, and shall not diminish the parties' obligation to arbitrate the disputes subject to this clause.

(Exh. A, p. 1).

14.    As evidenced by the affidavit of Robert S. Ritter, which is attached hereto as Exhibit C, the Loan Agreement involves interstate commerce within the meaning of the Federal Arbitration Act, 9 U.S.C. § 2.    Therefore, the Loan Agreement is subject to enforcement under Section 2 of the Federal Arbitration Act, and the Court should compel arbitration of Pierce's claims.

WHEREFORE, American General Financial Services of Alabama, Inc. moves to dismiss Pierce's Complaint for failure to state a claim upon which relief may be granted, or in the alternative, to compel Pierce's claims to arbitration.

s/ David A. Elliott
David A. Elliott

Attorney for American General
Financial Services of Alabama, Inc.

**OF COUNSEL:**

BURR & FORMAN LLP
420 North 20th Street
3100 Wachovia Tower
Birmingham, Alabama 35203
(205) 251-3000
(205) 458-5100
DElliott@burr.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, fax or email on this the 2nd day of April, 2007:

> Atheal Pierce
> 112 Knollwood Blvd.
> Montgomery, Alabama 36117

> s/ David A. Elliott
> OF COUNSEL

## NOTE AND SECURITY AGREEMENT

**AMERICAN GENERAL FINANCE**

| ACCOUNT NUMBER | TYPE | DATE FINANCE CHARGE BEGINS TO ACCRUE |
|---|---|---|
| 7618726 | F | IF DIFFERENT FROM DATE OF NOTE |

| BORROWER(S) NAME AND ADDRESS | PAYEE (LENDER) |
|---|---|
| ATHEAL PIERCE<br>701 DORIS CIRCLE<br>MONTGOMERY, AL 36105 | AMERICAN GENERAL FINANCE, INC.<br>4447 ATLANTA HIGHWAY<br>MONTGOMERY, AL 36109 |

| Date of Note | First Payment Due Date | Other Payments Due on Same Date of Each Month. | Final Payment Due Date | Amount of First Payment | Amount of Balloon Payment | Amount of Monthly Payment | Total Number of Payments | Term of Loan in Months |
|---|---|---|---|---|---|---|---|---|
| 02/03/99 | 03/07/99 | | 02/07/19 | $ 914.70 | $ NONE | $ 820.26 | 240 | 240 |

### ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| 1.$ NONE Premium to Life Insurance Co. (Joint Coverage) | 7. Appraiser for Appraisal Fee ___ $NONE | PAID TO _____ |
| 2.$ NONE Premium to Life Insurance Co. (Single Coverage) | 8. Title Exam Fee/Title Insurance ___ $NONE | PAID TO _____ |
| 3.$ NONE Premium to Disability Insurance Co. | 9. Taxes Paid to Gov't. Agency ___ $NONE | |
| 4.$ NONE Premium to Property Insurance Co.$ NONE Amount of Coverage | 10. Abstract Fee ___ $NONE | PAID TO _____ |
| 5.$ NONE Paid to Public Officials for Certificate of Title Fees | 11. Attorney Fee ___ $NONE | PAID TO _____ |
| 6.$ NONE Paid to Public Officials for Recording and Releasing Fees | 12. Paid on Prior Account with Lender $NONE | |
| | 13. Amount Paid to you or on your behalf itemized below → $ 85000.00 | $85000.00 TO CUS& HAVENWO |

| | | |
|---|---|---|
| 10.00% Agreed Rate of Charge | | $ _____ |
| A.$ NONE  Interest Surcharge | | $ _____ |
| B.$ NONE  Prepaid Finance Charge (Points) | | $ _____ |
| 14.$ 85000.00 Amount Financed (Sum of lines 1 thru 13) | C.$ NONE  Prepaid Finance Charge (Mortgage Recording Tax) | $ _____ |
| 15.$ 111956.84 FINANCE CHARGE → | D.$ NONE  Broker Fee  Prepaid FINANCE CHARGE | $ _____ |
| 16. 10.00 % ANNUAL PERCENTAGE RATE | (Paid to _____ ) | |
| | E.$ 111956.84 Interest | $ _____ .00 |
| 17.$ 196956.84 Total of Payments | 18.$ 85000.00 Principal Amount of Loan (14 + 15A + 15B + 15C + 15D) | .00 YOU |

**PARTIES:** "You" means each and all of those who signed this Note and Security Agreement ("Agreement") as a Borrower. If there is more than one Borrower, each is liable for the entire obligation ("joint and several liability"). The word "we", "us" and "our" mean Lender.

**PROMISE TO PAY:** You agree and promise to pay the original principal amount of the loan (amount financed plus any Interest Surcharge, Prepaid Finance Charges which includes Points, Brokers Fee and Mortgage Recording Tax) together with interest on the unpaid balances at the Agreed Rate of Charge set forth. The total of the original principal amount of the loan and such scheduled interest is to be repaid in monthly installments. The Finance Charge will be less if you make payments ahead of schedule, and greater if you make payments later than scheduled. You may prepay this loan in full or in part at any time without penalty. Partial prepayment will not defer or delay your obligation to pay remaining installments.

**TIME OF REPAYMENT:** The first payment shall be due on the First Payment Due Date indicated and the following payments shall be due on the same day of each succeeding month to and including the Final Payment Due Date.

**INTEREST SURCHARGE:** An interest surcharge of 6% of the first $2,000 of the amount financed may be charged to you by us. If your loan is prepaid in full by any means within 90 days of the date of your loan, you will receive a pro rata refund or credit of the interest surcharge except that in such event, we can retain an amount of no less than $25. After 90 days, the interest surcharge is fully earned by us. No refund of the interest surcharge will be made except as stated in this provision.

**LATE PAYMENT CHARGE:** If a payment is more than 10 days late, you will be charged and we may collect a late payment charge not to exceed the greater of $10 or 5% of the amount of the scheduled payment in default, not to exceed $100.

**ARBITRATION OF CLAIMS AND WAIVER OF JURY TRIAL:** Borrower(s) hereby acknowledge that the transactions evidenced by this agreement involve interstate commerce. Borrower(s) and Lender agree that, except as otherwise set forth in this provision, all claims, disputes, or controversies of every kind and nature between Borrower(s) and Lender shall be resolved by arbitration including (i) those based on contract, tort or statute, (ii) those arising out of or relating to the transaction(s) evidenced by this agreement, the disclosures relating to this agreement, the Federal Disclosure Statement, any insurance certificates or policies, any documents executed at or about the same time this agreement was executed or (iii) those arising out of, relating to any other prior, proposed or actual loan or extension of credit (and the relationships which result from these transactions or any other previous transactions between Borrower(s) and Lender). Borrower(s) and Lender further agree that all issues and disputes as to the arbitrability of claims must also be resolved by the arbitrator.

**BORROWER(S) AND LENDER UNDERSTAND THAT EACH HAS THE RIGHT TO LITIGATE SUCH DISPUTES THROUGH A COURT, AND BORROWER(S) AND LENDER VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL OR JUDGE TRIAL OF SUCH DISPUTES.**

Arbitration of such claims will be conducted by a single arbitrator selected by the Borrower(s) and Lender, pursuant to the Federal Arbitration Act and according to the commercial rules of the American Arbitration Association, at a reasonable and convenient location to be selected by the Borrower(s). Each party shall pay one-half of the arbitration costs and expenses.

Borrower(s) and Lender agree that they and the Arbitrator shall be bound by the Federal Rules of Evidence in the arbitration of such claims. In the event of a conflict between the commercial rules of the American Arbitration Association and the Federal Rules of Evidence, the Federal Rules of Evidence control. The Arbitrator's findings, decision and award shall be written, and shall be based on the law of the jurisdiction in which this agreement was executed. The decision of the Arbitrator shall be final, binding, and enforceable in any court as though it were a decision on the merits after a trial on the merits. The Arbitrator's findings, decision and award shall be subject to judicial review as provided in 9 USC Section 10.

**BORROWER(S) AND LENDER AGREE THAT THE ARBITRATOR MAY AWARD PUNITIVE DAMAGES ONLY UNDER CIRCUMSTANCES WHERE A COURT OF COMPETENT JURISDICTION COULD AWARD SUCH DAMAGES. HOWEVER, IN NO EVENT SHALL AN AWARD OF DAMAGES EXCEED FIVE (5) TIMES THE ECONOMIC LOSS SUFFERED BY THE PARTY. BORROWER(S) AND LENDER FURTHER AGREE THAT THE ARBITRATOR SHALL NOT CONDUCT ANY CLASS-WIDE PROCEEDINGS AND WILL BE RESTRICTED TO RESOLVING THE INDIVIDUAL DISPUTES BETWEEN THE PARTIES.**

Borrower(s) and Lender agree that, notwithstanding the foregoing, Lender retains the right to use judicial or self-help remedies (i) to repossess or foreclose on collateral or to enforce the security interests relating to this transaction, and (ii) to pursue collection actions against the Borrower(s) where the amount of the debt is $10,000 or less. The exercise of this right by Lender to pursue judicial or self-help remedies shall not constitute a waiver of Lender's right to compel the arbitration of any claim or dispute subject to this arbitration clause - including the filing of a counterclaim by Borrower(s) in a lawsuit filed by Lender.

This arbitration clause shall be binding upon the assigns, directors, officers, representatives, employees, parent companies, affiliated companies, subsidiaries and successors of Lender, and the administrators, assigns, executors, heirs and representatives of Borrower(s). In addition, the parties agree to submit to arbitration not only the foregoing claims or disputes against each other, but also all claims or disputes they have against (i) all other persons or entities involved with the transactions subject to this clause, (ii) all persons or entities who signed or executed any of the documentation subject to this clause, and (iii) all persons or entities who may be jointly or severally liable to any of the parties to this agreement regarding matters or events relating to the transactions and documentation subject to this clause.

Borrower(s) and Lender agree that if any provision of this arbitration clause is invalid or unenforceable under the Federal Arbitration Act, the provision which is found to be invalid or unenforceable shall be inapplicable and deemed omitted, but shall not invalidate the remaining provisions of this arbitration clause, and shall not diminish the parties' obligation to arbitrate the disputes subject to this clause.

**COPY RECEIVED:** You acknowledge receipt of a completely filled in copy of this Agreement and the Federal Disclosure Statement on a separate sheet. **You further acknowledge that you have read, and agree to all terms and provisions of the Arbitration of Claims and Waiver of Jury Trial.**

**CAUTION:** **IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

Witness _____    _____
Signature of Principal Borrower

Witness _____    _____
Signature of Other

**EXHIBIT**
**A**

**SEE REVERSE SIDE FOR ADDITIONAL IMPORTANT TERMS**

001-00002 (8-1-97) ALB261 ALABAMA I.B. MINI-CODE AND INTEREST AND USURY

**SECURITY INTEREST:** You grant us a security interest in the property described in the Federal Disclosure Statement, the collateral appraisal of the same date signed by you and/or as described below, along with all attachments, accessories, replacements, accessions and proceeds thereof, including amounts payable under any insurance policy covering the loss of such property, and unearned premiums (all collectively "Property"). The Property secures your obligations under this Agreement and any modification, extension, or renewal thereof.

| Year | Make | Model | Body Type | Vehicle Identification No. | N-U | No. Cyls. |
|------|------|-------|-----------|----------------------------|-----|-----------|
|      |      |       |           |                            |     |           |
|      |      |       |           |                            |     |           |
|      |      |       |           |                            |     |           |

You grant us a security interest in any unearned premiums from any insurance you have elected and purchased through us in connection with this transaction which protects the account or collateral. You grant us the right, but not the obligation, to cancel such policies in the event of your default, subject to any applicable restrictions under state law. If we cancel the insurance, any unearned premium will be credited to this account or refunded to you.

**BAD CHECK FEE:** We may charge you the greater of the bad check processing fee of $ 25.00 or the amount equal to the actual charge made by the depository institution for the return of unpaid or dishonored instruments if you make a payment by check, draft or negotiable order of withdrawal and such instrument is refused by the bank because of insufficient funds or because you did not have an account at that bank at the time of presentation. Bad check fees will accrue.

**ATTORNEY FEES:** If the original principal amount of the loan exceeds $300.00, you agree to pay reasonable attorney's fees should this loan be referred for collection to an attorney who is not a salaried employee. Attorney fees will not be in excess of 15% of the unpaid debt.

**DEFAULT AND REMEDIES:** If you do not pay the full amount of any payment by the date it is due, if you fail to keep any promise in this Agreement, if all Borrowers die, or if any Bankruptcy proceeding is commenced by or against you, then you are in default. Upon default, we may accelerate this Agreement and demand from you immediate payment of the entire amount of the unpaid principal and accrued but unpaid interest, and any other accrued but unpaid charges. We may take immediate possession of the Property, with or without process, by peaceful entry upon the premises where the Property is located. Upon request, you will assemble the Property for us at any place we reasonably request. We have the rights, remedies, and duties of a secured party under the Alabama Uniform Commercial Code, and may sue and/or foreclose our security interest in the Property as may be permitted or required hereunder and in compliance with all other applicable laws. You will remain liable to us for any remaining deficiency balance unless the original cash price of the goods was $1,000 or less. The deficiency balance shall bear interest at the highest Agreed Rate(s) of Charge or Annual Percentage Rate as permitted by law. Our rights are cumulative and not exclusive.

**INTEREST AFTER FINAL PAYMENT DUE DATE:** If there is any unpaid balance remaining on the Final Payment Due Date, you agree to pay interest on that balance at the rates set forth, or at the highest lawful contract rate whichever is higher.

**DELAY IN ENFORCEMENT:** We may accept late payments or partial payments even though marked "payment in full" without losing any of our rights under this Agreement. We may delay enforcing any of our rights under this Agreement without losing them.

**AGREEMENTS CONCERNING PROPERTY:**
1. You agree that regardless of how affixed, the Property shall remain personal property, and shall not become part of any Real Estate.
2. You own the Property free and clear except for the security interest you have granted us and will keep the Property free and clear of any other liens, claims and security interests.
3. You will keep the Property at your address shown on this Agreement.
4. You will keep the Property in good repair, not misuse it, not use it for an improper or illegal purpose, hide it, or without our prior written consent, sell it.
5. You understand that all risk of loss is on you. You agree to keep the Property (not including household goods) fully insured with us as a loss payee or co-insured. **IN THE EVENT YOU FAIL TO KEEP THE PROPERTY FULLY INSURED, YOU AGREE THAT WE MAY, BUT ARE NOT OBLIGATED TO OBTAIN INSURANCE AND YOU WILL REIMBURSE US IMMEDIATELY FOR SUCH EXPENSE. IF SUCH INSURANCE IS PURCHASED BY US, WE MAY ADD SUCH PREMIUM TO YOUR ACCOUNT AND CHARGE INTEREST ON SUCH PREMIUM. NO LIABILITY INSURANCE WILL BE INCLUDED.** Notwithstanding the foregoing, you will not be required to maintain property insurance on household goods.
6. Until you reimburse us, all premiums paid by us, and our expenses related to insuring, protecting, repossessing, storing, repairing, foreclosing, and selling the Property are secured hereunder and shall bear interest at the Agreed Rates of Charge herein.
7. You irrevocably appoint us your Attorney-in-Fact to receive and endorse and apply to your balance any insurance draft we may receive.

**GOVERNING LAW:** This loan is regulated by either the Alabama Small Loan Act, The Alabama Mini-Code and/or the Interest and Usury Statute depending on the amount and the term on the loan.

---

NOTICE: The following NOTICE applies if you were referred to us by a seller of consumer goods or services and a substantial portion of the proceeds of this loan is used for the purchase of consumer goods from that seller.

## NOTICE

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

---

### CO-SIGNER GUARANTY AND GRANT OF SECURITY INTEREST:

To induce us to extend credit to the Borrower, the undersigned Co-Signer guarantees the Borrower's obligation to us as set forth in the Agreement above and on the reverse. You grant us a security interest in your property, if any, of all property described in the Federal Disclosure Statement, Collateral Appraisal and/or that property as described in this Agreement, on the same terms, as found in the "Security Interest" and "Agreements Concerning Property" paragraphs in this Agreement. You understand that we may sue and collect Borrower's entire obligation from either or both of you if the Borrower defaults, regardless of whether we choose to sue or attempt to collect from the Borrower. You waive all defense, rights and notices, including, but not limited to, acceptance, presentment, demand, dishonor and subrogation, to the extent permitted by law. We may extend, renew, compromise or modify Borrower's obligation, substitute or release collateral, or delay in enforcement of our rights, all without your consent or notice, without you being released from your obligations to us under this guaranty and grant of security interest. If there is more than one Co-Signer, each of your guaranties, grants of security interest, agreements and waivers is joint and several.

| | | |
|---|---|---|
| Co-Signer's Signature | Address | Date |

| | | |
|---|---|---|
| Co-Signer's Signature | Address | Date |

Co-Signer acknowledges receipt of a separate copy of the NOTICE TO CO-SIGNER. If a security interest (mortgage or deed of trust) is being granted in your Co-Signer's principal dwelling to secure the Borrower's obligation, Co-Signer also acknowledges receipt of a copy of the Federal Disclosure Statement and two copies of the NOTICE OF RIGHT TO CANCEL, unless the transaction is purchase money, or is a refinance without new money except for earned interest and closing costs.

001-00002 (8-1-97) ALB262 ALABAMA I.B. MIN-CODE AND INTEREST AND USURY

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

AMERICAN GENERAL FINANCE, INC.,

     Plaintiff,

vs.                           CASE NO. CV 2005-3197-TMH

ATHEAL PIERCE,

     Defendant.

## FINAL JUDGMENT

THIS CAUSE came before the Court for a final trial on the merits on Tuesday, August 29, 2006 at 9:00 a.m. At the appointed time, the Court called the case, and only Plaintiff appeared with counsel. The Court continued the matter for 20 minutes in the event the Defendant was late, and at 9:20 a.m. when the case was called for a second time, the Defendant was still not present in Court. Plaintiff moved for the entry of a default and default judgment, and the Court finds that those motions are due to be and are hereby GRANTED.

### Findings of Fact and Conclusions of Law

Plaintiff filed this action on, to-wit: December 19, 2005, seeking multiple relief against the Defendant in the form of a request that the Defendant be ejected from certain real property; that Plaintiff be granted a declaratory judgment that the Defendant's statutory right of redemption under Alabama law had been forfeited; and for damages for the Defendant's trespass, conversion or holding over possession of the real property after a point in time when Defendant should have surrendered possession to the Plaintiff.

1



EXHIBIT
B

The Defendant executed a promissory note and real estate mortgage to secure repayment of the note on March 12, 1998. The property subject to the mortgage had the following legal description:

> Lot 70, Map of Upchurch Subdivision, as the same is recorded in Plat Book 13 at Page 144, in the office of the Judge of Probate of Montgomery County, Alabama.

During calendar year 2004, Defendant defaulted under the terms of both the promissory note and mortgage. As a result, American General Finance accelerated the balance, demanded payment in full and commenced foreclosure of its mortgage pursuant to the power of sale provisions in the mortgage. A foreclosure sale was conducted on October 31, 2005 in Montgomery, Alabama after proper notice was given to the Defendant and proper notice was published in a newspaper of local circulation. At the conclusion of the foreclosure sale, the Court finds that American General Finance, Inc. became the lawful owner of the property making the high bid. A Foreclosure Deed was prepared and duly recorded in the office of the Judge of Probate of Montgomery County, Alabama at Real Property Book 3206, Page 0252-0254, said deed being recorded on November 9, 2005. Plaintiff gave Defendant written notice demanding possession of the premises in a letter mailed both by regular mail and certified mail, return receipt requested on November 1, 2005. These letters were sent to the Defendant giving him notice pursuant to Title 6-5-251 *Code of Alabama,* 1975 to deliver possession of the premises. The letters informed the Defendant that if he did not deliver peaceful possession of the premises to Plaintiff within ten (10) days, as prescribed by statute, that he could forfeit his statutory right of redemption. The Court finds that instead of delivering possession of the premises to Plaintiff as Defendant was obligated to do at the conclusion of the foreclosure sale and

2

after receiving written demand for possession, the Defendant continued to occupy the premises.

Defendant first filed a voluntary Chapter 13 bankruptcy case in the United States Bankruptcy Court for the Middle District of Alabama, which had the effect of staying this proceeding and Plaintiff's further efforts to get possession of the premises. This Court has been made aware of the fact that Plaintiff filed a Motion to Lift or Terminate Automatic Stay in Bankruptcy Court, and the Honorable William Sawyer granted that Motion and allowed Plaintiff to go forward with this action in State Court to gain possession of the premises.

Defendant appealed Judge Sawyer's Order to the United States District Court for the Middle District of Alabama. The Honorable Myron Thompson subsequently affirmed Judge Sawyer's ruling. The Defendant then attempted to appeal Judge Thompson's ruling to the Eleventh Circuit Court of Appeals. The Court has been made aware that Defendant's appeal to the Eleventh Circuit was dismissed effective June 20, 2006. Hence, Defendant has exhausted his remedies under federal law, and there is no further stay on these proceedings because of his bankruptcy case. In the interim, the Court finds that Defendant continued in possession of the premises illegally and unlawfully.

Under Count I of the Complaint, Plaintiff seeks an order of this Court ejecting Defendant from the possession of the premises. The Court finds that the Plaintiff is the lawful and legal owner of the property and is entitled to immediate possession of the premises. The Court directs that a copy of this Order be served upon Defendant, Atheal Pierce, immediately, and if he has not vacated the premises or had any person whom he has allowed to occupy the premises under any lease or other grant or license to vacate the premises by midnight Monday, September 4, 2006, that the Sheriff of Montgomery County

3

be directed to assist Plaintiff in any and all ways necessary and proper to evict the Defendant, or any other person occupying the premises pursuant to a grant, right or lease from Defendant, from the premises, including any and all personal property in or on the premises.

Under Count II of the Complaint, Plaintiff asks for a declaratory judgment of this Court determining that Defendant Atheal Pierce had forfeited his statutory right of redemption under Alabama law. The Court finds that the Plaintiff is the lawful owner of the property having acquired title through foreclosure proceedings on October 31, 2005; that Plaintiff sent Defendant a proper written demand for possession pursuant to Title 6-5-252 Code of Alabama, 1975; and that the Defendant continued in possession of the premises unlawfully beyond the ten-day statutory time frame. Accordingly, the Court finds that the Plaintiff is entitled to declaratory relief and that this Court finds that Defendant has forfeited any and all statutory rights of redemption under Title 6-5-250 et seq. Code of Alabama, 1975, for his failure to comply with the written demand for possession sent to him by Plaintiff.

In Count III of the Complaint, Plaintiff seeks damages against the Defendant for rental value of the property and for attorney fees and litigation expenses incurred in having to bring this ejectment action. The Court has considered the matter and finds that the fair rental value of the subject property is $350.00 per month. The Court finds that the Defendant should have vacated the premises and delivered possession to Plaintiff not later than November 15, 2005, and as of the hearing date, Plaintiff is entitled to nine and one-half (9 ½) months rent at the rate of $350.00 per month, which equals $3,325.00. Plaintiff has requested that it be awarded an attorney fee of $3,500.00 for the expense it incurred

4

in bringing this action. Considering the Defendant has filed a bankruptcy case, an appeal to the United States District Court, an appeal to the United States Court of Appeals for the Eleventh Circuit and has required Plaintiff to bring this action in State Court, the Court finds that such a fee is extremely reasonable and awards Plaintiff a fee of $3,500.00 as a part of its damages. Accordingly, the Court grants Plaintiff a monetary judgment against the Defendant in the amount of Six Thousand Eight Hundred Twenty-Five and 00/100 Dollars ($6,825.00) plus the costs of this action, for which let execution issue.

Accordingly, it is, therefore,

ORDERED, ADJUDGED AND DECREED, that this Court finds that Plaintiff is entitled to a default judgment under Count III of the Complaint in the amount of Six Thousand Eight Hundred Twenty-Five and 00/100 Dollars ($6,825.00) plus costs. Plaintiff is further entitled to a declaratory judgment that the statutory rights of redemption of the Defendant has been FORFEITED. Finally, the Court finds that Plaintiff is entitled to immediate possession of the premises and orders the Sheriff of Montgomery County to assist Plaintiff in obtaining possession of the premises, by force if necessary, if the Defendant does not comply with vacating the premises by the deadline specified by this Court's Order set forth above.

Done at Montgomery, Alabama, this the _30_ day of _August_, 2006.

_____
Honorable Truman M. Hobbs, Jr.
Judge, Montgomery County Circuit Court

cc:    Mr. Charles N. Parnell, III, attorney for Plaintiff
Atheal Pierce, pro se

5

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| ATHEAL PIERCE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. |
| | ) | |
| AMERICAN GENERAL FINANCE, | ) | 06 CV-985-WKW |
| INC., et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## AFFIDAVIT OF ROBERT S. RITTER

**COMES NOW** affiant, Robert S. Ritter, who after being duly sworn under oath, deposes and states that the following facts are within his personal knowledge, and that if called as a witness he could testify competently thereto:

1.     I serve as Director of Operations for portions of the State of Alabama and am an officer of American General Financial Services of Alabama, Inc. ("AGFS"), a Delaware corporation headquartered in Evansville, Indiana, which was formerly known as American General Finance, Inc., an Alabama Corporation ("AGF-Alabama").  All references hereinafter to AGFS shall include collectively AGFS and AGF-Alabama, as the case may be, depending on the period of my statement.

2.     I am familiar with the business practices of AGFS, particularly those that are transacted in interstate commerce.



1555240

3.    The flow of money between AGFS and its borrowers has a substantial interstate connection.  First, the check given to the borrower as loan proceeds is drawn out of a bank account maintained at Wachovia Bank in Chapel Hill, North Carolina.

4.    The funds made available to AGFS for loans, and which are maintained in the bank account in North Carolina, had earlier been held in another bank account with the Bank of New York in New York City by American General Finance Corp. ("AGFC"), a company affiliated with AGFS, before being loaned to AGFS.  AGFC is an Indiana corporation also headquartered in Evansville, Indiana.

5.    No funds are sent by AGFC for deposit into a local bank account held by AGFS.  Nor does AGFC fund AGFS's operations through general business investments.  Instead, each loan made by AGFS is specifically funded by AGFC, and this funding occurs by a check written by AGFS's employees on the Wachovia account.

6.    Each transaction between AGFS and AGFC occurs pursuant to inter-company funding agreements.  The accounting entries for each transaction are primarily recorded and maintained by personnel who work in Evansville, Indiana and who provide services to AGFC.  The transaction and data entries are primarily accomplished through a computer link-up between AGFS's branch offices in Alabama and a mainframe computer system in Evansville, Indiana.    The

1555240

2

transactional entries for AGFS are recorded and maintained on that computer system located in Evansville.

7.    The funds received by AGFS from its borrowers as loan repayments also have a substantial interstate commerce nexus.  Once the borrower makes a loan payment by cash or check, the branch personnel will enter the fact and amount of payment on the branch's computer terminal.  That entry is then sent by computer links to the mainframe computer system in Evansville.  The cash or check payment from the borrower is deposited into a local account maintained by the AGFS branch, where it typically remains for only 1-2 days (the minimum time ordinarily needed for the checks to clear and become collected ("collected. funds")).  The local account is then debited in an automatic clearing house ("ACH") transaction, with the funds then being deposited in a Northern Trust Co. account of AGFC located in Chicago, Illinois.  Typically on the same date of this deposit, the money is then transferred to the bank account maintained by AGFC at the Bank of New York in New York City, where the funding process begins anew.

8.    For those borrowers who have agreed to a direct debit program ("Automatic Payment"), another interstate connection occurs.  The agreement signed by those borrowers authorizes Bank One (located in Springfield, Illinois) to debit the borrower's local bank account in the amount of the monthly payment. Bank One is now known as J.P. Morgan Chase.  Those funds are then sent by an

automatic clearinghouse ("ACH") transaction to AGFC's account with Bank One located in Houston, Texas. On the same day, the funds are then moved to AGFC's account with the Bank of New York in New York City.

9.    Before a loan is made to a borrower, the loan must first be approved by various personnel. Depending on the size of the loan, the approval may have to come from personnel at the company headquarters in Evansville. But even those loans which the branch manager or the district manager of AGFS approve must meet certain company policies. Those policies are set forth in company manuals or directives, and they emanate from company headquarters located in Indiana.

10.    Some of the forms used by AGFS to originate or document the loans come from a vendor in St. Louis, Missouri and are shipped across state lines to each of AGFS's branch locations in Alabama. Other loan document forms are either maintained in files located in the mainframe computer system in Evansville, or have been downloaded from that system and stored in the local branch computer.

11.    If consumers such as Altheal Pierce have questions regarding their account with AGFS, the consumer can call AGFS's offices by dialing a toll-free telephone number which is provided to the consumer on the monthly billing statements. The people who respond to these telephone calls generally reside outside the State of Alabama.

12.    AGFS keeps true and correct copies of the loan agreements entered into between AGFS on the one hand and borrowers on the other.  According to the business records of AGFS, Altheal Pierce closed a loan with the AGFS branch located in Montgomery, Alabama, on April 3, 1999.  Exhibit A to AGFS's Motion for Summary Judgment is a true and correct copy of the Loan Agreement executed in connection with Pierce's loan on April 3, 1999.  These documents were prepared, signed, and are maintained in the regular course of business of AGFS, and it is the regular practice of AGFS to prepare, have signed and maintain such documents.

FURTHER AFFIANT SAYETH NOT.

ROBERT S. RITTER

STATE OF ___GEORGIA___ )

COUNTY OF ___CHEROKEE___ )

    Before me the undersigned Notary Public, in and for said County and in said State, personally appeared ROBERT S. RITTER, who is known to me, and who after first being duly sworn under oath, deposed and stated that the foregoing facts are true and correct to the best of his knowledge and/or information.

    Sworn to and subscribed before me on this the ___29th___ day of ___March___, 2006.



Notary Public

My Commission Expires August 11, 2010

[SEAL]

My Commission Expires: _____